**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Allyn Clevinger, | No. CV 03-2564-PHX-RGS |
| Plaintiff, | **ORDER** |
| vs. | |
| Intel Corporation, | |
| Defendant. | |

Pending before the Court are Defendant Intel Corporation's Motion for Summary Judgment [Doc. # 29] and Plaintiff Allyn Clevinger's Motion to Strike Defendant's Statements of Fact No. 5 and 6 [Doc. # 31]. Following oral argument held on October 6, 2005, the Court took the matter under advisement. Having considered the parties' written and oral arguments, the record before it, as well as the applicable law, the Court now enters its ruling.

I.     BACKGROUND

Plaintiff Allyn Clevinger was first hired by Defendant Intel Corporation as a student intern, or "co-op," in 1990. Clevinger held this position during two school semesters and two summers while she attended college. [Doc. # 30, Exh. A, pp. 15, 22-23] In 1992, after graduating from the University of New Mexico with a bachelor's degree in electrical engineering, Clevinger began regular, full-time employment with Intel as an Applications

1  Engineer in Santa Clara, California. [*Id*., pp. 12, 23-24]  In 1995, Clevinger applied for, and
2  received, a lateral transfer to an Integration Engineer position in Arizona.  [*Id*., pp. 26-27]
3  In 1997, Clevinger was promoted from an exempt grade 3 engineer to an exempt grade 5
4  engineer. [*Id*., pp. 29- 30]

5    Following this promotion, in 1998, Clevinger received a mid-year performance review
6  indicating that her performance needed to improve by the end of the year or further action
7  would be taken, including termination. [*Id*., pp. 36-42]   By mid-year 1999, Clevinger was
8  warned that she might be placed on a corrective action plan ("CAP") because her
9  performance was not in line with that of other employees.  Specifically, Clevinger was told
10 that her technical level was not sufficient and that she needed to have more visibility with
11 local teams.  [*Id*., pp. 50-52]

12   Clevinger ultimately was placed on a CAP in December 1999 due to her performance
13 problems.  She was told that her failure to complete the CAP might result in her termination.
14 [*Id*., pp. 60-61] Immediately following the delivery of the CAP, Clevinger received her 1999
15 Performance Evaluation, which, among other things, indicated that her "rate of progress
16 [was] slower than that of her peers" and that "improvement [was] required." [*Id*., pp. 72-74;
17 Exh. 7]

18   In response to her placement on a CAP and her 1999 Performance Evaluation,
19 Clevinger initiated Intel's formal "Open Door" process.  As a result, Clevinger was contacted
20 by Human Resources representative Patricia Williams.  Clevinger related to Ms. Williams
21 that friction with co-worker Sharon Rembelski was impeding her ability to do her job and
22 that she would prefer to work a modified schedule in order to achieve a better "work/life
23 balance." [*Id*., pp. 77-80]  Clevinger did not believe she was singled out by Rembelski as
24 "other people were targeted as well."  Although Clevinger stated that she did not know the
25 reason for Rembelski's behavior, she believed that "it [was] just her personality."  [*Id*., pp.
26 53-55]  During the Open Door process, Clevinger did not state that she was disabled. [*Id*.,
27 p. 90] Ultimately, Ms. Williams concluded that there was no basis for the issues with respect
28 to the interoffice relationships and that the CAP was warranted. [*Id*., p. 85]

- 2 -

1    At the conclusion of the CAP period, Clevinger was informed that she had not been
2  successful and that her employment would be terminated, effective September 2000.
3  Clevinger's final performance evaluation indicated that Clevinger "failed to consistently
4  maintain the expected level of performance required to be successful in process integration."
5  [*Id*., pp. 29, 94; Exh. 9]  After her termination, Clevinger went to the Equal Employment
6  Opportunity Commission ("EEOC") regarding the possibility of filing a "wrongful
7  termination" claim.  Although Clevinger "felt wronged," she did not contend that she was
8  claiming disability discrimination at the time.  After filling out some paperwork and talking
9  to one of the counselors, Clevinger was informed by an EEOC representative that it appeared
10  that she did not have a basis for filing a discrimination claim.  Accordingly, Clevinger
11  decided to "reassess" and "move on." [*Id*., pp. 99-102]

12    In December 2000, Clevinger was rehired by Intel as a nonexempt grade 57 process
13  engineer technician. [*Id*., Exh. A, p. 29; Exh. B, pp. 9, 17, 29-30, 38-39; Exh. D, ¶¶ 2, 4] The
14  decision to rehire Clevinger was based upon Eugene Kochert's favorable experience working
15  with her on a certain task force, of which he was chairman, prior to her termination.  [*Id*.,
16  Exh. B, pp. 6-7, 13-14] Clevinger's performance evaluations after her rehire were generally
17  positive, and in early 2003, Kochert, who was then her supervisor, agreed to seek approval
18  for a promotion to an exempt grade 3 engineer position on Clevinger's behalf.  Kochert
19  informed her, however, that in view of her prior performance history, it "wouldn't be an easy
20  process." [*Id*., Exh. A, p. 150; Exh. B, pp. 31-39, 42, 46-48, 70 & exhibits 3 & 4] Kochert
21  presented the promotion recommendation during Intel's 2003 annual review process.  At the
22  conclusion of the process, there was a general consensus among the participating managers
23  that Kochert's promotion request was justifiable. [*Id*., Exh. B, pp. 49-50; Exh. D, ¶ 4; Exh.
24  C, pp. 10-11, 17-19]

25    According to established Intel procedures, Gary Beckner, the Intel rank manager at
26  the time, submitted the promotion request to E.J. Peiker, the Fab 12 Factory Manager, and
27  Scott Baker, a Human Resources representative, for approval in a Plant Manager Review
28  meeting.  During the meeting, Peiker expressed his concern that, in light of Clevinger's

- 3 -

1  previous performance problems, the requested promotion would move her from an
2  engineering technician position in which she was succeeding back into the type of
3  engineering position in which she had previously failed.  Peiker asked Beckner what steps
4  had been taken and what information had been gathered to ensure that Clevinger would not
5  fail if she returned to the position of an engineer.  When Beckner could not respond to
6  Peiker's satisfaction, Peiker did not grant the promotion request because "we received no
7  information that demonstrated Ms. Clevinger had overcome her previous performance
8  problems as an exempt engineer and could successfully meet the performance expectations
9  for an exempt engineer in Fab 12."  [*Id*., Exh. C, p. 24; Exh. D; Exh. E]

10  Clevinger filed a charge of discrimination with the EEOC on June 30, 2003, alleging
11  claims of disability discrimination and retaliation in connection with the denial of her
12  promotion requests.  [*Id*., Exh. A, pp.110-111; exhibits 10-13] In her deposition, however,
13  Clevinger, testified that she could not recall any occasion, prior to filing her charge, in which
14  she complained to anyone at Intel that she had been subjected to disability discrimination.
15   [*Id*., Exh. A, pp. 112-113]

16  Clevinger indicated on her EEOC forms that she had depression but that (1) she did
17  not have any limitations from any mental or physical condition; (2) medications controlled
18  her symptoms; (3) she did not have any symptoms that were not corrected by medication; and
19  (4) she did not need any accommodation to perform her job.  Although she indicated that it
20  would be helpful to work four 10-hour days per week, she stated that such a request was "in
21  no way linked to disability."  On September 26, 2003, the EEOC issued its dismissal and
22  notice of suit rights.  [*Id*., Exh. A, exhibits 12, 13]

23  On December 23, 2003, Clevinger filed the instant lawsuit, alleging claims of
24  disability discrimination and retaliation.  On December 15, 2004, Intel filed a Motion for
25  Summary Judgment addressing both claims.  In her Response, Clevinger concedes that there
26  is no evidence to support her retaliation claim.  Clevinger also narrows the basis for her
27  unlawful discrimination claim to an alleged "record of" disability, i.e., that "[h]er history of
28

disabling depression has become the basis upon which Intel has kept her from advancing for the last four years."

## II. STANDARD OF REVIEW

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one "that might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. A court can consider only admissible evidence in ruling on a motion for summary judgment. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).[1] The court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996).

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of a element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. The moving party need not disprove matters on which the opponent has the burden of proof at trial. *Id*. at 325. The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585-88 (1986).

## III. DISCUSSION

---

[1] The unauthenticated medical records attached to Clevinger's Separate Statement of Facts do not constitute admissible evidence and thus the Court cannot consider them in reaching its decision in this matter. *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

1  In order to establish a *prima facie* case of discrimination under the ADA, a plaintiff must prove that (1) she is disabled; (2) she is qualified, with or without a reasonable accommodation, to perform the essential functions of the job; and (3) she suffered an adverse employment action because of her disability. *Humphrey v. Memorial Hosps. Ass'n*, 239 F.3d 1128, 1133 (9th Cir. 2001). Intel argues that Clevinger cannot establish the first and third prongs of this test.

Disability Under the ADA

"A plaintiff in an ADA case bears the burden of proving disability within the meaning of the ADA." *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 794 (9th Cir. 2001). "A 'disabled' employee under the ADA is one who: (1) has a 'physical or mental impairment that substantially limits one or more of the major life activities of such individual'; (2) has a 'record of such an impairment'; or (3) is 'regarded as having such an impairment.'" *Id.* (quoting 42 U.S.C. § 12102(2)). As noted above, Clevinger alleges that she has suffered an adverse employment action because of a record of a disability.

To establish a claim based on a record of a disability, a plaintiff must prove that she has a record of an "impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k); *Coons v. Secretary of U.S. Dep't of Treasury*, 383 F.3d 879, 886 (9th Cir. 2004). Clevinger identifies two major life activities: working and interacting with others.

1.  Working

To be substantially limited in "working," an individual must be

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

*Thornton*, 261 F.3d at 794-95 (quoting 29 C.F.R. § 1630.2(j)(3)(i)). Here, Clevinger has failed to submit any evidence regarding her vocational training, the geographic area to which she has access, or the number and type of jobs from which she allegedly was disqualified because of her alleged impairment. *See* 29 C.F.R. §1630.2(j)(3)(ii)(A) & (B) (listing these

- 6 -

1  factors as central to the determination whether an individual is substantially limited in her
2  ability to work). Clevinger's speculation that "she would have likely failed at any job in her
3  condition" does not meet the "individualized inquiry" required by the ADA regarding the
4  extent to which she was precluded from working in a class of jobs or a broad range of jobs
5  in various classes. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999). To the
6  contrary, following the denial of her promotion request in the Spring of 2003, the record
7  shows that Clevinger has applied for only senior grade level positions (grade levels 6 and 7)
8  for which she is not eligible under Intel's applicable guidelines for internal transfers.

9  Furthermore, "[a] person whose physical or mental impairment is corrected by
10 medication or other measures does not have an impairment that presently 'substantially limits'
11 a major life activity. To be sure, a person whose physical or mental impairment is corrected
12 by mitigating measures still has an impairment, but if the impairment is corrected it does not
13 'substantially limi[t]' a major life activity." *Sutton*, 527 U.S. at 482-83. In the present case,
14 Clevinger admits that medication controls her symptoms, that she does not have any
15 symptoms that medication does not control, and that she does not need any accommodation
16 to perform her job. Accordingly, because Clevinger has not addressed the extent to which
17 she was significantly restricted in her ability to perform either a class of jobs or a broad range
18 of jobs in various classes as compared to the average person having comparable training,
19 skills and abilities, and further, admits that medication controls her symptoms, she fails to
20 raise a genuine issue of fact as to whether she is disabled by having a record of an
21 impairment that substantially limited her ability to work.

22 / / /

23         2. <u>Interacting with Others</u>

24 In recognizing that interacting with others is a major life activity, the Ninth Circuit
25 has cautioned that:

26 [T]he limitation must be severe or, in other words, substantial when compared
   to the ability of the average person in the general population. We hold that a
27 plaintiff must show that his relations with others were characterized on a
   regular basis by severe problems, for example, consistently high levels of
28 hostility, social withdrawal, or failure to communicate when necessary.

1 *McAlindin v. County of San Diego*, 192 F.3d 1226, 1235 (9th Cir. 1999), *modified on other
2 grounds*, 201 F.3d 1211 (9th Cir. 2000) (internal quotation marks and citations omitted).
3 Here, Clevinger's allegation regarding friction with a single co-worker, without evidence of
4 "consistently high levels of hostility, social withdrawal, or failure to communicate when
5 necessary," is insufficient to establish a substantial limitation on the major life activity of
6 interacting with others. *McAlindin*,192 F.3d at 1235. Further, Clevinger's own assertion that
7 other employees had similar problems with the same co-worker belies her claim that her
8 alleged inability to interact with others was the source of the friction.

9 Similarly, Clevinger's brief references to marital difficulties, without more, fail to
10 support her contention that her alleged impairment substantially limits the major life activity
11 of interacting with people. Furthermore, as discussed above, because Clevinger admits that
12 her symptoms are controlled by medication, she fails to establish that she has an impairment
13 that presently substantially limits the major life activity of interacting with others. *Sutton*,
14 527 U.S. at 482-83.

15 In light of the foregoing, Clevinger fails to raise a genuine issue of fact as to whether
16 she is disabled by virtue of having a record of impairment that substantially limited her
17 ability to work and to interact with others. Because of its determination above, the Court will
18 not address the remaining arguments of the parties. Accordingly,

19 **IT IS ORDERED** granting Intel's Motion for Summary Judgment. [Doc. # 29]

20 Having considered Clevinger's Motion to Strike Defendant's Statements of Fact No.
21 5 and 6, along with Exhibit 3 attached to Clevinger's deposition [Doc. # 30, Exh. A],

22 **IT IS FURTHER ORDERED** granting in part and denying in part said motion.
23 [Doc. # 31].

24 No foundation having been established for Exhibit 3,

25 **IT IS FURTHER ORDERED** granting Clevinger's motion with respect to this
26 document.

27 **IT IS FURTHER ORDERED** directing the Clerk of the Court to strike Exhibit 3,
28 which is attached to Doc. # 30, Exh. A, from the record.

- 8 -

Intel's Statements of Fact No. 5 and 6 being supported by Clevinger's deposition testimony,

**IT IS FURTHER ORDERED** denying Clevinger's motion with respect to Intel's Statements of Fact No. 5 and 6.

DATED this 7th day of October, 2005.

Roger G. Strand
Senior United States District Judge